Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
| AIRCRAFT INVESTOR RESOURCES, LLC, | ) | No. 09-38458-rld11 |
| Debtor. | ) | |
| LT BUILDERS GROUP, LLC, | ) | |
| Plaintiff, | ) | Adv. Proc. No. 10-03246-rld |
| v. | ) | |
| BLUE SKY AVGROUP, LLC, et al., | ) | MEMORANDUM OPINION |
| Defendants. | ) | |

On April 28, 2011, I heard argument at the hearing ("Hearing") on plaintiff LT Builders Group, LLC's ("LTB") Motion for Partial Summary Judgment ("Motion") on 1) all claims for relief asserted by LTB in its Complaint ("Complaint"), Docket No. 1 in this adversary proceeding ("Adversary Proceeding"); 2) all counterclaims asserted by defendant Blue Sky AvGroup, LLC ("BSA") in its Answer (Docket No. 10); and 3) all counterclaims asserted by defendant Johan Charl Brink ("Brink") in his

Page 1 - MEMORANDUM OPINION

Answer (Docket No. 13). In the Complaint, LTB asserts two mirror image claims for declaratory relief against BSA and Brink respectively in Counts 1 and 2 for each claim. Hereafter, the counts in each claim of the Complaint will be referred to collectively as "Count 1" and "Count 2." Again, with respect to the counterclaims asserted by BSA and Brink in their respective Answers, Counterclaims 1 through 4 in each Answer request the same relief with regard to LTB. Accordingly, hereafter, the counterclaims in each Answer will be referred to collectively as "Counterclaims 1 through 4." LTB filed an Answer to the defendants' counterclaims, asserting its own counterclaim against BSA and Brink for intentional interference with economic relations. LTB does not seek summary judgment on its counterclaim in the Motion. At the conclusion of the Hearing, I took the Motion under advisement.

Following the Hearing I have carefully considered the pleadings, memoranda of arguments and declarations filed by the parties, in light of the arguments presented, and applicable legal authorities. Based on my consideration of the record before me, I conclude that LTB is entitled to summary judgment on Count 1 and partial summary judgment on Count 2 of the claims stated in its Complaint, with the balance of Count 2 to be dismissed. I further conclude that LTB is entitled to summary judgment on Counterclaims 1, 3 and 4 stated in the defendants' Answers. The parties are agreed that the issues between them in Counterclaim 2 have been resolved and will be dismissed as moot.

This Memorandum Opinion sets forth my conclusions of law in light of the record before me under Civil Rule 52(a), applicable in this

Page 2 – MEMORANDUM OPINION

adversary proceeding under Federal Rule of Bankruptcy Procedure 7052.[1]  I have jurisdiction to decide this matter under 28 U.S.C. §§ 1334 and 157(b)(2)(K), (N) and (O).

Background

A.  Events in the main bankruptcy case

1.  Events triggering the debtor's bankruptcy

From 2003 to 2009, the debtor, Aircraft Investor Resources, LLC ("AIR, LLC"), designed, manufactured and sold various models of aircraft and aircraft kits under the brand "Epic."  See Second Amended Disclosure Statement at 4 (main case docket no. 610).  AIR, LLC also provided construction assistance to amateur aircraft kit builders ("amateur builders").  Id.  AIR, LLC operated out of a leased facility in Bend, Oregon ("facility").  Id.

AIR, LLC experienced significant financial problems, ultimately becoming unable to comply with its obligations to individual amateur builders, its landlord, ER1, LLC ("ER1"), and other creditors.  Id. Several creditors commenced litigation against AIR, LLC, its officers and directors, and ER1.  Id.

ER1 locked AIR, LLC out of the facility on July 27, 2009.  Id. at 5.  At that point, AIR, LLC ceased its operations.  Id.

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 3 - MEMORANDUM OPINION

AIR, LLC filed its chapter 11 petition on September 10, 2009.[2]
The chapter 11 trustee ("trustee") was appointed on October 27, 2009.

2.   Sale of the debtor's assets under § 363

Following his appointment, the trustee began efforts to sell
AIR, LLC's assets, fielding inquiries from various prospective buyers,
including Merlin Partners, LLC ("Merlin").  Id.  During negotiations with
Merlin, Harlow Aerostructures, LLC ("Harlow"), expressed interest in
purchasing AIR, LLC's assets.  Id.  Harlow soon entered into an asset
purchase agreement with the trustee ("Harlow APA").  Id. at 6.  Under the
Harlow APA, Harlow became the stalking horse bidder with a $2 million
purchase offer for substantially all of AIR, LLC's assets.  Id.

The trustee filed a motion for an order to establish bidding
procedures for the purchase of AIR, LLC's assets and to approve the
proposed sale of substantially all of AIR, LLC's assets to Harlow
pursuant to § 363(f)[3] ("Sale Motion")(main case docket no. 256).  After

_____

[2] AIR, LLC originally filed its chapter 11 petition in the United
States Bankruptcy Court for the District of Nevada.  AIR, LLC's
bankruptcy case was transferred to the United States Bankruptcy Court for
the District of Oregon ("bankruptcy court") on October 15, 2009.

    AIR, LLC's wholly-owned subsidiaries, Aircraft Completion Services,
LLC ("ACS"), and Epic Air, LLC ("Epic Air"), each filed chapter 7
petitions on October 16, 2009, and October 23, 2009, respectively.  See
Second Amended Disclosure Statement at 5.  Epic Air filed its chapter 7
petition in Nevada, whereas ACS filed its chapter 7 petition in the
United States Bankruptcy Court for the District of Delaware.  Id.  Both
bankruptcy cases soon were transferred to the bankruptcy court and
substantively consolidated with AIR, LLC's bankruptcy case.  Id.

[3] Section 363(f) provides: The trustee may sell property under
subsection (b) or (c) of this section free and clear of any interest in
                                                        (continued...)

Page 4 - MEMORANDUM OPINION

holding two hearings, the bankruptcy court entered an order ("Sale

Procedures Order")(main case docket no. 283) granting the trustee's sale

motion.  Id.

Not long before the bid deadline, China Aviation Industry

General Aircraft Co., Ltd. ("China Aviation"), expressed interest in

purchasing AIR, LLC's assets.  Id.  China Aviation made a bid on

March 23, 2010.  Id.

On March 26, 2010, the trustee conducted an auction of AIR,

LLC's assets; China Aviation, Harlow and LTB made competing bids.  Id.

The trustee selected China Aviation's final bid of $4.3 million as the

prevailing bid.  Id.  China Aviation consequently entered into an asset

purchase agreement with the trustee ("China Aviation APA").  LTB was

designated assignee under the China Aviation APA.  See Amended Order (I)

Authorizing and Approving Asset Purchase Agreement by and between China

Aviation Industry General Aircraft Co., Ltd. and Trustee; (II)

Authorizing and Approving Sale of Substantially All Assets of

Substantively Consolidated Debtor Free and Clear of Interests; and (III)

Granting Certain Related Relief ("Amended Sale Order")(main case docket

---

³(...continued)
such property of an entity other than the estate, only if –
        (1) applicable nonbankruptcy law permits sale of such
        property free and clear of such interest;
        (2) such entity consents;
        (3) such interest is a lien and the price at which such
        property is to be sold is greater than the aggregate
        value of all liens on such property;
        (4) such interest is in bona fide dispute; or
        (5) such entity could be compelled, in a legal or
        equitable proceeding, to accept a money satisfaction of
        such interest.

Page 5 - MEMORANDUM OPINION

no. 397), at 6, 17.

Under Section 1.1 of the China Aviation APA, China Aviation purchased AIR, LLC's assets listed on Schedule 1.1, attached to the China Aviation APA. See Amended Sale Order at 4, 22. In particular, under Section 1.1(a), these assets included "all equipment, machinery, furniture, trade fixtures, improvements, tooling, molds, plugs, hand tools and other tangible personal property owned by [AIR, LLC], wherever located, including without limitation all of such property located at the [facility] other than WIP [work in progress] . . . ." See Amended Sale Order, Exh. A at 22. Under Section 1.1(b), these assets also included "all inventories of supplies, raw materials, parts, and finished goods inventory owned by [AIR, LLC], including without limitation all of such property located at the [facility] other than WIP . . . ." Id.

Sections 2.4 and 7.6(b) of the China Aviation APA provided, however, that AIR, LLC's assets did not include

any partially-completed aircraft or any parts inventory that are owned by amateur builders that [were AIR, LLC's] customers. For this purpose, parts that are attached to aircraft, parts that are located in the . . . facility and specifically listed in the aircraft log for each partially-completed aircraft, and parts specially manufactured for aircraft located in the . . . facility shall be deemed excluded from the Assets.

Id. at 8.

Section 10.3(a) of the China Aviation APA required that, prior to the closing of the sale, the trustee give the amateur builders access to the facility to allow each amateur builder to

(i) remove its partially-completed aircraft from the facility at its sole cost and expense and (ii) identify and segregate any parts and other inventory such [amateur builder] believes it owns. In no event shall any [amateur builder] be permitted to remove any assets from the . . . facility other than its partially-completed aircraft.

Page 6 - MEMORANDUM OPINION

<u>Id.</u> at 12.

Section 10.3(b) of the China Aviation APA also provided that LTB would employ

a third-party to conduct and complete a detailed inventory of all assets
and property . . . located in the . . . facility as of the Closing Date,
including without limitation, any remaining partially-completed aircraft
and any parts or other inventory that are owned by the [amateur
builders]. . . . Upon completion and delivery of the inventory of assets
to [China Aviation, or its assignee, LTB] will provide a copy of the
inventory of assets to the [trustee] and each of the [amateur builders]
(the date on which [China Aviation or LTB] delivers a copy of such
inventory of assets, the "Inventory Delivery Date").

<u>Id.</u>

### 3. Inventory of the AIR, LLC's assets

Before the April 2, 2010 hearing on the Sale Motion,[4] BSA filed a motion to conduct an inventory of the assets ("BSA Inventory Motion")(main case docket no. 306). BSA asked that the bankruptcy court direct the trustee to allow BSA to conduct an inventory of the personal property and, after determining which personal property belonged to it, remove such personal property before approving and closing the sale to China Aviation.

At the April 2, 2010 hearing, the bankruptcy court approved the Sale Motion. <u>See</u> Record of Proceeding of April 2, 2010 Hearing (main case docket no. 362). The bankruptcy court entered the Amended Sale Order on April 9, 2010. The Amended Sale Order provided that AIR, LLC's assets did not include "any partially-completed aircraft or any parts

---

[4] The bankruptcy court conducted a preliminary hearing on the Sale Motion prior to the April 2, 2010 hearing. <u>See</u> Record of Proceeding of March 30, 2010 Hearing (main case docket no. 362).

inventory that are owned by amateur builders that [were AIR, LLC's] customers . . . ." Amended Sale Order at 11, ¶ 3. The Amended Sale Order further provided that "[a]ny sale of Assets by the Trustee shall specifically exclude all partially completed aircraft and any parts inventory owned by amateur builders." Amended Sale Order at 17, ¶ 26.

As for the BSA Inventory Motion, the bankruptcy court entered a stipulated order regarding the inventory of AIR, LLC's personal property assets ("Stipulated Inventory Order")(main case docket no. 416) on April 30, 2010.

Paragraph 2 of the Stipulated Inventory Order provided that LTB and the trustee would conduct a complete inventory of all the personal property located in the facility ("facility inventory"), consistent with the terms and procedures set forth in the China Aviation APA and the Stipulated Inventory Order. Stipulated Inventory Order at 2. The facility inventory was to be completed by June 7, 2010, provided that if any party interfered with, delayed or failed to cooperate with the performance of the facility inventory at any time, the trustee or LTB could seek further instructions and/or relief from the bankruptcy court. Id. at 3.

Paragraph 2 of the Stipulated Inventory Order further provided that the trustee and LTB "may establish further detailed procedures in their sole discretion to accomplish the Facility Inventory and its purposes in an orderly and expeditious manner." Id. (Emphasis added.)

Paragraph 4 of the Stipulated Inventory Order authorized the trustee and LTB to implement certain procedures to complete the facility inventory. Under paragraph 4(b) of the Stipulated Inventory Order:

Page 8 - MEMORANDUM OPINION

The Trustee and/or [LTB] will provide notice to known persons and entities claiming ownership of personal property within or affixed to the Facility of an opportunity to enter the Facility and identify, at prearranged times and under further procedures to be established by the Trustee and [LTB], any property in which they claim an ownership interest, other than the partially completed kit aircraft listed in Subsection 4c (below),[5] as to which ownership is stipulated.  The persons and entities to be notified under this Section include: (i) all known owners of LT Aircraft . . . . [collectively, the "Notice Parties"]. Notice Parties who are unavailable to visit the Facility may designate proxies, in writing and in a form acceptable to the Trustee and [LTB], to make such identifications on their behalf.  Unless alternative arrangements have been consented to by both the Trustee and [LTB], the failure of any Notice Party to appear at the designated dates in person or by way of a proxy, or otherwise identify its property (other than kit aircraft identified in Subsection 4(d) by those designated dates, shall constitute a waiver of the right to claim specific personal property within the Facility.  (Emphasis added.)

Id. at 4.

Paragraph 4(d) of the Stipulated Inventory Order provided:

The Trustee and/or [LTB] shall catalog, by description and location within the Facility, all items of personal property located in the Facility as to which any of the Notice Parties assert ownership interests, and shall identify, using an appropriate system, each such item of personal property and the party or parties claiming ownership of such item.  In connection with the Notice Party's opportunity to enter the Facility as provided in Subsection 3b [sic], the Trustee or [LTB] will permit, in accordance with procedures developed by the Trustee and [LTB], each Notice Party asserting ownership of an item of personal property to tag its asserted ownership interest.  No items of personal property may be moved or removed by any Notice Party from their existing locations without the specific consent of the Trustee and [LTB]. (Emphasis added.)

Id. at 5-6.

Paragraph 6 of the Stipulated Inventory Order provided that the "Facility Inventory, including the results of the dispute resolution processes described [herein] (including any adversary proceedings that

---

[5] Paragraph 4(c) of the Stipulated Inventory Order addressed the release of the hulls of certain aircraft owned by particular amateur builders.  Brink and BSA were among those amateur builders allowed to remove their hulls under paragraph 4(c).

Page 9 - MEMORANDUM OPINION

<u>may be filed), shall be the exclusive and final method of establishing</u>
<u>the ownership of the personal property in the Facility.</u>"  <u>Id.</u>  (Emphasis
added.)

The trustee filed a motion for an order confirming the
inventory results on June 29, 2010.  <u>See</u> Trustee's Motion for an Order
(1) Confirming the Inventory Results, (2) Releasing Undisputed Third-
Party Property from Facility, and (3) Requiring Pick-Up or Bailment of
the Property ("Inventory Confirmation Motion")(main case docket no. 470).
He also filed two status reports, reporting that he completed the
facility inventory but noting that BSA and Brink asserted claims in
personal property claimed by LTB and certain amateur builders.  <u>See</u>
Chapter 11 Trustee's Fourth Status Report Regarding the Inventory Order
("Inventory Status Report")(main case docket no. 469); Trustee's
Supplemental Report re: Inventory (August 14, 2010)("Supplemental Status
Report")(main case docket no. 507).  The trustee attached as exhibits to
the Inventory Status Report lists of personal property that LTB and other
creditors claimed as their own.  The trustee attached as exhibits to the
Supplemental Status Report lists of additional items of inventory claimed
by BSA and Brink ("Additional Items Lists").

BSA and Brink objected to the Inventory Confirmation Motion.
<u>See</u> BSA's Objection to Trustee's Motion for an Order (1) Confirming the
Inventory Results, (2) Releasing Undisputed Third-Party Property from
Facility, and (3) Requiring Pick-Up or Bailment of Property ("BSA
Objection")(main case docket no. 496); Brink's Joinder in BSA's Objection
to [Inventory Confirmation Order] ("Brink's Joinder")(main case docket
no. 497)(collectively, "BSA/Brink Objection").  BSA and Brink attached

Page 10 - MEMORANDUM OPINION

the Additional Items List to the BSA/Brink Objection.

BSA and Brink argued that the Stipulated Inventory Order established a two-step procedure for identifying and tagging items of personal property in the facility. BSA Objection at 2. Amateur builders first would identify and tag items of personal property in which they claimed a specific identifiable ownership interest as "the initial step in determining ownership rights with each [amateur] builder." Id. The trustee and LTB then would prepare a facility inventory, which would describe all items in the facility, including items in which each amateur builder claimed an ownership interest – essentially, a comprehensive, all-encompassing inventory. Id. Once the trustee and LTB completed the facility inventory, the amateur builders would have the opportunity to identify items listed in the facility inventory that were described either as general inventory or as being owned by another amateur builder. Id. If two or more amateur builders claimed an ownership interest in any item, they would go through the dispute resolution process set forth in the Stipulated Inventory Order to resolve their competing claims. Id. at 3.

BSA and Brink claimed that, when their representative, Ashley Emerson, visited the facility on April 30, 2010, he had received a catalog of personal property items complied by Christa Thornton-Smith of CAZ Consulting, LLC ("CAZ"), whom the trustee and LTB retained to conduct and prepare the facility inventory. Id. The catalog listed categories of items pre-designated as belonging to certain amateur builders and items identified as inventory. Id. Emerson believed he was to confirm and tag only those items in the catalog specifically identifiable as

Page 11 - MEMORANDUM OPINION

those belonging to BSA and Brink.  _Id._  In fact, in his Declaration, Emerson stated that,

> My visit to the facility was the first visit of all [amateur] builders who were being asked to identify personal property belonging to them. . . . When I began the inspection on April 30, 2010, I was specifically advised by Ms. Smith and Doug King, a principal of [LTB], that I was only to identify or tag, the items that belonged to either [BSA] or Brink. I did not identify any items from general inventory other than items painted the custom colors of the [BSA] or Brink Airplane or specifically identified by serial number for either plane.

He did not believe that he was going to tag items designated as belonging to other amateur builders or identified as general inventory.  _Id._ Emerson was given access to the entire facility to claim and tag personal property items owned by BSA and Brink.  However, had they known that the inventory process consisted of one step, BSA and Brink argued, they would have marked every single item in which they had a possible ownership interest or needed to complete their aircraft.  _Id._ at 5.

LTB filed a response (main case docket no. 501), arguing that BSA and Brink were attempting to circumvent the express terms of the Stipulated Inventory Order by asserting late claims to personal property items after the facility inventory was completed.  LTB further argued that it purchased all general inventory items under the China Aviation APA.  Accordingly, BSA and Brink could not assert claims to general inventory items.

Following the hearing on August 11, 2010, the bankruptcy court granted the Inventory Confirmation Motion, entering an order ("Inventory Confirmation Order")(main case docket no. 515) on August 26, 2010.  The Inventory Confirmation Order provided in paragraph 1 that any item of

Page 12 - MEMORANDUM OPINION

personal property claimed by any third-party would be released if it was not subject to the competing claims of Brink and BSA. Inventory Confirmation Order at 2. The Inventory Confirmation Order included as an exhibit the Additional Items List.

With respect to the BSA/Brink Objection, the bankruptcy court stated that it would set the BSA/Brink Objection for evidentiary hearing if not resolved. Id.

B.      Events in the adversary proceeding

        1.  LTB's complaint

        Nine days after the hearing on the Inventory Confirmation Motion, LTB filed a complaint against BSA and Brink for declaratory relief under Rule 7001(2) and (9) to determine the validity and extent of their interests in certain general inventory items. LTB sought a judgment declaring that: (1) BSA's and Brink's claims to such general inventory items or any other personal property items were untimely, barred and/or waived (Count 1), and (2) BSA and Brink had no ownership interest in the general inventory items or any other personal property items (Count 2).

        BSA and Brink each filed answers to the complaint and asserted counterclaims against LTB. In their answers, BSA and Brink set forth the same arguments they made in the Brink/BSA Objection. BSA and Brink further contended that the catalog provided to Emerson on April 30, 2010 did not include many essential items.

        As to their counterclaims, Brink and BSA sought (1) a declaratory judgment that the Supplemental Status Report was the

operative inventory report (Counterclaim 1); (2) an injunction requiring LTB to provide them with a copy of the facility inventory (Counterclaim 2); (3) a declaratory judgment allowing BSA and Brink to identify all assets in the facility inventory that they are "entitled to" or have an ownership interest in (Counterclaim 3); (4) an injunction requiring LTB to allow them to participate in the dispute resolution process established by the Stipulated Inventory Order (Counterclaim 4).

LTB filed an answer to the counterclaims, asserting various affirmative defenses. It also asserted a compulsory counterclaim for intentional interference with economic relations. Specifically, LTB contended that the allegations and injunctive claims made by BSA and Brink in their answers substantially interfered with LTB's ownership of the AIR, LLC assets it purchased and with its business and economic relationships. LTB sought not less than $50,000 in damages against BSA and Brink on its compulsory counterclaim, along with an injunction against further interference with LTB's business and economic relationships.

2.  LTB's motion for partial summary judgment

Five months after the initial pre-trial conference, LTB filed the Motion. LTB argued that it was entitled to summary judgment that the claims of BSA and Brink were waived under the terms of the Stipulated Inventory Order. LTB contended that paragraph 4(b) of the Stipulated Inventory Order provided that all claims of third parties to personal property within the facility were waived unless asserted at the time of each claimant's scheduled appointment during the inventory procedure.

Page 14 - MEMORANDUM OPINION

Contrary to the assertions of BSA and Brink, the Stipulated Inventory Order did not provide a two-step process; it provided for each party "to have one visit to the facility to identify all property without limitation." LTB's Memorandum of Law in Support of Motion for Partial Summary Judgment at 8 ("LTB Memo")(adv. proc. docket no. 42).

LTB further argued that it was entitled to summary judgment that it owned all inventory and other personal property in the facility, free and clear of the claims of BSA and Brink, as LTB had purchased all of the debtor's assets under § 363. BSA and Brink never provided any evidence to show that they owned any personal property in the facility. The additional items claimed by BSA and Brink were general inventory items purchased by LTB under § 363. LTB Memo at 15.

LTB also sought dismissal of all of the counterclaims of BSA and Brink.[6] With respect to Counterclaim 1 that the Supplemental Status Report be declared as the operative inventory report, LTB contended that it did not state a claim upon which relief could be granted – the trustee's status reports spoke for themselves.

LTB further claimed that the third and fourth counterclaims were moot. With respect to Counterclaim 3 seeking a declaratory judgment that BSA and Brink each was entitled to identify all assets in the facility inventory it believed it was entitled to or had an ownership

---

[6] With respect to the second counterclaim requiring LTB to provide them a copy of the master inventory list, BSA and Brink conceded that this counterclaim was moot and may be dismissed, as they and LTB resolved it through discovery and a settlement conference. Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment at 23 ("BSA/Brink Opposition")(adv. proc. docket no. 83).

Page 15 - MEMORANDUM OPINION

interest in, LTB claimed that BSA and Brink already had made those identifications. Moreover, neither BSA nor Brink provided any evidence showing such alleged ownership.

As to the Counterclaim 4 seeking to require LTB to participate in the dispute resolution process contemplated by the Stipulated Inventory Order, LTB asserted that BSA, Brink and LTB already had participated in informal and formal dispute resolution procedures to no avail.

BSA and Brink opposed the Motion, advancing several arguments. BSA and Brink first contended that paragraph 4(b) of the Stipulated Inventory Order required LTB and the trustee to create additional procedures to carry out the facility inventory. BSA/Brink Opposition at 3.

Specifically, the Stipulated Inventory Order provided for a two-step process, the first of which required the amateur builders to identify and tag their own personal property located within the facility. BSA/Brink Opposition at 8. The second step involved the creation of a comprehensive list that included personal property items in which each amateur builder claimed an ownership interest and general inventory items (e.g., parts, inventory and manuals). _Id._ Once completed, the amateur builders should have the opportunity to identify items listed in the facility inventory that were described either as general inventory or as being owned by another amateur builder.

BSA and Brink claimed that when their proxy, Emerson, visited the facility, Thornton-Smith instructed him to tag only those personal property items belonging to BSA and Brink. _Id._ at 9. Emerson did not

Page 16 - MEMORANDUM OPINION

identify any general inventory items.  _Id._  According to Emerson,
Thornton-Smith never instructed him to tag any personal property items
necessary to complete the aircraft of BSA and Brink.  _Id._

BSA and Brink also contended that CAZ was to create a master
list of the assets in the facility so that the amateur builders could
identify the assets they owned before the assets were released from the
facility.  Thornton-Smith of CAZ did not provide BSA and Brink with a
comprehensive inventory list, they asserted, but with "inventory
spreadsheets" (i.e., catalog).  The catalog she provided BSA and Brink
did not include all of the items that were listed in other inventory
spreadsheets provided to other amateur builders, who were affiliated with
LTB.  According to BSA and Brink, the catalog contained categories of
items pre-designated as belonging to certain amateur builders and items
identified as inventory.  Those items categorized as inventory, BSA and
Brink claimed, were not described with sufficient specificity to allow
for identification.

BSA and Brink asserted that Thornton-Smith moreover allowed
other amateur builders to make multiple visits to the facility, whereas
BSA and Brink's representative only visited the facility once to identify
personal property belonging to BSA and Brink.

BSA and Brink also argued that LTB was not entitled to summary
judgment on its ownership claim because there is no actual controversy
between LTB and BSA concerning the disputed personal property.  Any
controversy over ownership of the personal property in dispute, BSA and
Brink contend, lies between BSA and Brink and other individual amateur
builders who also claimed an ownership interest in that same personal

Page 17 - MEMORANDUM OPINION

property.

Even if LTB had a valid claim, BSA and Brink argued that LTB still was not entitled to summary judgment because there was sufficient evidence that BSA and Brink had valid ownership claims to the disputed personal property. BSA fully paid for its aircraft prepetition. Brink's aircraft was the next in line to be completed, with BSA's aircraft to follow immediately.

BSA and Brink further argued that LTB was not entitled to summary judgment on their counterclaims. As to their first counterclaim, BSA and Brink asserted that the Supplemental Inventory Report was the operative report; because it was incorporated into the Inventory Confirmation Order, the Supplemental Inventory Report was the law of the case. BSA/Brink Opposition at 22.

With respect to their third counterclaim, BSA and Brink contended that they did not identify personal property items already, as LTB asserted. BSA and Brink stated that their third counterclaim would be moot only if LTB conceded that the Supplemental Inventory Report was the operative report, which it did not. BSA/Brink Opposition at 23.

As to their fourth counterclaim, BSA and Brink argued that LTB misled them regarding the process for identifying the personal property assets in the facility. BSA and Brink contended that LTB interfered with their rights at every step of the way. Id. at 24. BSA and Brink requested that the bankruptcy court determine that they had a right to assert an interest in the personal property items described in the Additional Items List incorporated in the Inventory Confirmation Order. Id. at 24.

Discussion

A.  Summary judgment standards

        Under Civil Rule 56(c), applicable under Rule 7056, summary
judgment is appropriate only when "the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law."  Summary judgment should not be entered
when there are disputes over facts that may affect the outcome of the
suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 249 (1986).  Irrelevant or unnecessary factual disputes will not be
counted.  Id.  A material fact is genuine if the evidence is such that
the fact-finder could return a verdict for the nonmoving party.  Id.  All
justifiable inferences from the evidence presented must be considered in
favor of the nonmoving party.  Id. at 255.

        The movant initially bears the burden of showing that there are
no genuine issues of material fact.  Bhan v. NME Hospitals, Inc., 929
F.2d 1404, 1409 (9th Cir. 1991).  If the movant satisfies this burden,
then the opposing party must produce sufficient evidence, through
affidavits or admissible discovery material, to demonstrate that genuine
material factual disputes exist.  Id.  The nonmoving party cannot rely on
the allegations in its pleadings to meet that burden.  Nelson v. Pima
Cmty. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996)("[M]ere allegations
and speculation do not create a factual dispute for the purpose of
summary judgment.").

Page 19 - MEMORANDUM OPINION

B.  Analysis

I have reviewed LTB's complaint, BSA's and Brink's answers and counterclaims, LTB's answer to their counterclaims, the various declarations and affidavits submitted by LTB, BSA and Brink.  I also have taken judicial notice of various documents filed in the main case and the adversary proceeding relevant to the matters before me.  See Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). Of these documents, I particularly focused on the China Aviation APA, the Amended Sale Order and the Stipulated Inventory Order.

Having reviewed and considered the parties' submissions, and all of these relevant documents, as well as relevant legal authorities, I have reached conclusions as stated above.  My reasons follow.

1.  Overarching Considerations

Underlying this bitterly fought litigation is an unfortunate, but fundamental misunderstanding by defendants of what a sale under § 363 accomplishes.  Under § 363(b)(1), "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ."  § 363(f) allows the trustee to sell property of the estate free and clear of competing liens and interests under specific circumstances, as identified in n.3 above. § 363 advisedly allows for such "cleansed title" sales in order to give comfort to buyers from the estate that they will receive what they pay for and allow the recovery to the estate to be maximized.  The sale of AIR, LLC's assets in the main case was approved under §§ 363(b) and (f), and the sale was beneficial to the estate.

However, what could not be sold in such a sale were assets, comingled with the AIR, LLC assets, that AIR, LLC did not own.  See Popp v. Zimmerman (In re Popp), 323 B.R. 260, 266 (9th Cir. BAP 2005). Because of cost considerations, the sale of AIR, LLC assets preceded the inventory process required to separate out the assets at the facility that were owned by the amateur builders.  However, the process developed through the Stipulated Inventory Order ultimately was essential to provide for that separation.

The terms of the relevant orders and the evidence submitted by the parties through declarations and authenticated exhibits establish that there is no genuine issue of material fact that the authorized representative of BSA and Brink was given complete access to the facility to claim and identify any personal property items that BSA and Brink claimed they owned, consistent with the terms of the Stipulated Inventory Order.  I understand that both BSA and Brink paid a lot of money for their aircraft, and they both have very substantial claims in the AIR, LLC case on which they will receive distributions, based on present estimates, that will be substantially less than twenty cents on the dollar.  They have submitted evidence that their aircraft were the next two in line to be completed when AIR, LLC's operations at the facility were shut down.  They also have presented evidence that their partially completed aircraft may have been cannibalized by representatives of AIR, LLC, with parts having been transferred to other amateur builders' aircraft.  Accordingly, part of their argument in opposition to the Complaint initially and to the Motion is the inventory process, as conducted under the Stipulated Inventory Order, did not give them an

Case 10-03246-rld    Doc 155    Filed 06/08/11

appropriate opportunity to identify not only the personal property they owned, but personal property inventory and equipment items to which they were entitled because they needed such items to complete their aircraft. Outside of bankruptcy, their claims may be compelling, and they may have independent avenues to pursue them. However, that argument is simply incompatible with the sale and inventory processes that were authorized in the AIR, LLC case. All assets that AIR, LLC owned were sold free and clear of the defendants' claims. BSA and Brink were given a clear and adequate opportunity to claim what they owned at the facility, and the assets they claimed ownership in have been turned over to them. My specific dispositions as to each of the claims at issue in the Motion is as follows:

2. Summary judgment on Count 1

BSA and Brink advance several arguments as to why LTB is not entitled to summary judgment on Count 1. Their arguments essentially boil down to a challenge to the Stipulated Inventory Order's terms and the facility inventory process as applied when Emerson visited the facility to identify and assert claims to BSA and Brink's personal property.

a. Stipulated Inventory Order governed facility inventory process

BSA and Brink first contend that the Stipulated Inventory Order did not control the facility inventory process because Thornton-Smith developed her own procedures without reference to the Stipulated

Page 22 - MEMORANDUM OPINION

Inventory Order.  They rely on Thornton-Smith's statement at her

March 24, 2011 deposition that she never received a copy of the

Stipulated Inventory Order.  Declaration of Lisa Schiller in Support of

Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment

("Schiller Declaration")(adv. proc. docket no. 88), Exhibit 2 at 8,

Deposition of Christa A. Thornton-Smith ("Thornton-Smith Deposition"),

34:18-22.  Accordingly, BSA and Brink argue, the facility inventory

procedures set forth in the Stipulated Inventory Order are irrelevant.

Paragraphs 4(b) and 4(d) of the Stipulated Inventory Order

required the trustee and/or LTB to grant amateur builders access to the

facility "at prearranged times" to identify and tag personal property

items in which they claimed an ownership interest.  The trustee and LTB

were given discretion to fashion and implement additional procedures to

facilitate this process under paragraph 2 of the Stipulated Inventory

Order.

Although she did not receive a copy of the Stipulated Inventory

Order, Thornton-Smith discussed her proposed procedures with both the

trustee and Douglas King, managing member of LTB.  Thornton-Smith

Deposition, 35:2-3, 37:18-19, 38:4-5; Declaration of Christa A. Thornton-

Smith at 5 ("Thornton-Smith Declaration")(adv. proc. docket no. 45);

Supplemental Declaration of Christa A. Thornton-Smith at 2 ("Supplemental

Thornton-Smith Declaration")(adv. proc. docket no. 101).  Both the

trustee and King confirmed this, further asserting that they approved her

proposed procedures for the facility inventory.  Declaration of Kenneth

S. Eiler at 2-3 ("Eiler Declaration")(adv. proc. docket no. 100);

Declaration of Douglas King at 3 ("King Declaration")(adv. proc. docket

Page 23 - MEMORANDUM OPINION

1  no. 44); Supplemental Declaration of Douglas King at 2 ("Supplemental
2  King Declaration")(adv. proc. docket no. 102).

3      Thornton-Smith recommended to the trustee and King a multi-step
4  process for the facility inventory.  Supplemental Thornton-Smith
5  Declaration at 2.  She first would go through the facility to organize
6  the personal property items therein in bulk or piles (for safety
7  purposes), then tag bulk and specific personal property items.  Thornton-
8  Smith Deposition, 35:24-25, 36:1-5, 37:20-25, 38-1; Supplemental
9  Thornton-Smith Declaration at 2.  As Thornton-Smith organized the
10 facility, she pulled out personal property items she believed belonged to
11 each amateur builder and grouped those items next to that amateur
12 builder's aircraft.  Supplemental Thornton-Smith Declaration at 2;
13 Thornton-Smith Deposition, 37:22-25, 41:5-6, 42:8-11.

14      Thornton-Smith next scheduled an appointment with each amateur
15 builder or its proxy.  Supplemental Thornton-Smith Declaration at 2.  At
16 the start of the appointment, Thornton-Smith provided the amateur builder
17 or its proxy a list of airplane parts within the facility (i.e.,
18 "inventory spreadsheet") to help amateur builders identify their personal
19 property items.  Id. at 3.  Thornton-Smith then accompanied amateur
20 builders during their appointments, giving them unrestricted access to
21 the facility.  Id.  She noted all personal property items claimed by the
22 amateur builder listed on the inventory spreadsheet and had the amateur
23 builder add personal property items not listed on the inventory
24 spreadsheet.  Id.

25      Regardless of whether or not Thornton-Smith received a copy of
26 the Stipulated Inventory Order, the evidence before me indicates that the

Page 24 - MEMORANDUM OPINION

Stipulated Inventory Order informed and guided the facility inventory process. Thornton-Smith explained in her declarations and at her deposition her proposed facility inventory procedures, which are consistent with those set forth in the Stipulated Inventory Order. The trustee and LTB moreover exercised their discretion, as provided under paragraph 2 of the Stipulated Inventory Order, by allowing Thornton-Smith to propose further procedures for the facility inventory and by approving them. BSA and Brink have not provided any evidence showing how Thornton-Smith's non-receipt of the Stipulated Inventory Order rendered her proposed facility inventory procedures inappropriate or inconsistent with the terms of the Stipulated Inventory Order. BSA's and Brink's argument thus lacks merit.

b. No "master" facility inventory required

BSA and Brink next maintain that the facility inventory process involved a two-step process, the second step of which required the trustee and/or LTB to prepare a "master" facility inventory. This master facility inventory, BSA and Brink claim, was to include <u>all</u> personal property items within the facility, not merely those personal property items in which each amateur builder claimed an ownership interest.

A plain reading of the relevant provisions in the China Aviation APA and Paragraph 4(d) of the Stipulated Inventory Order invalidates this argument. Section 10.3(b) of the China Aviation APA states that "[u]pon completion and delivery of the inventory of assets to [China Aviation, the third-party] will provide a copy of the inventory of assets to . . . each of the [amateur builders]." Paragraph 4(d) of the

Stipulated Inventory Order provides that the trustee and/or LTB "shall catalog, by description and location within the Facility, <u>all items of personal property located in the Facility as to which any of the Notice Parties assert ownership interests</u>, and shall identify . . . each such item of personal property and the party or parties claiming ownership of such item."

Nothing in either section 10.3(a) of the China Aviation APA or paragraph 4(d) of the Stipulated Inventory Order indicates that the trustee and/or LTB had to list in the facility inventory each and every single item of personal property in the facility.  The trustee's Inventory Status Report and Supplemental Status Report carried out the objective of paragraph 4(d).  Both the Inventory Status Report and the Supplemental Status Report describe the disputes between the various claimants and include as exhibits lists of the disputed personal property items.

Moreover, as set forth in paragraph 2 of the Stipulated Inventory Order, the trustee and LTB were authorized to establish additional procedures, in their discretion, to accomplish the facility inventory.[7]  As the declarations submitted by LTB show, the trustee and LTB, in their discretion, decided to list only those personal property items in which amateur builders had claimed an ownership interest.

The trustee acknowledged in his declaration that the facility inventory procedures included providing lists of parts to amateur

---

[7] Paragraph 4(b) of the Stipulated Inventory Order indicates that the amateur builders would be subject to further procedures when they visited the facility to identify and claim the personal property they owned therein.

Case 10-03246-rld   Doc 155   Filed 06/08/11

builders.  Eiler Declaration at 3.  He determined, however, that such
lists were not material to the claiming process.  Id.

King explained in his declaration that he believed that
"creating a running list of every single nut and bolt within the Facility
would have been onerous, impractical, and pointless."  King Declaration
at 3.  He opined that it "would have been physically impossible to
complete a detailed packing list-type inventory of every single item of
personal property within the Facility before BSA and Brink and other
. . . builders entered to begin the identification process."  Id.  Such a
requirement, King maintained, "would have been impossible to meet within
the time constraints of the [Stipulated Inventory] Order and was
unnecessary to allow persons to claim personal property."  Supplemental
King Declaration at 2.

BSA and Brink offer the declaration of Richard Lucibella, BSA's
principal and managing member, in support of their interpretation of the
Stipulated Inventory Order.  Lucibella asserted that he always understood
and maintained that a comprehensive facility inventory first needed to be
completed in order to separate personal property belonging to LTB and the
amateur builders.  Declaration of Richard Lucibella in Support of
Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment
at 5 ("Lucibella Declaration")(adv. proc. docket no. 85).  Such
interpretation is contrary to the terms of the Stipulated Inventory
Order, that BSA's counsel signed.  However, Lucibella construed the
Stipulated Inventory Order to provide for the following steps: (1) the
amateur builders first would identify and tag their personal property
items within the facility; (2) the trustee and LTB next would prepare a

full, comprehensive facility inventory; and (3) the amateur builders finally would review the facility inventory and determine whether competing ownership claims had been made against their personal property items, which they would try to resolve. Lucibella Declaration at 5.

Lucibella attached to his declaration copies of various e-mails between him or his counsel, counsel for the trustee and counsel for LTB as evidence in support of his understanding. See Exhibits 1-4, 8-9 attached to Lucibella Declaration. None of the e-mails supports Lucibella's interpretation of the Stipulated Inventory Order. For example, the e-mail from counsel for the trustee merely states: "Don't have [the facility inventory] yet, but will forward as soon as I do." The trustee further informed Lucibella that he and his counsel "will have the order then, but if not, we will be able to address [BSA's] issues and make sure that the stipulated order reflects them."

Lucibella once or twice expressed in his e-mails his need for a comprehensive facility inventory to help him identify his personal property items and any competing claims thereto. But in most, if not all of his e-mails, he mainly expressed his wishes to have a third-party conduct the facility inventory. Based on the e-mail exchanges between Lucibella, the trustee and LTB, it appears that the trustee and LTB addressed his main concern.

Nothing in the evidence in the record before me indicates that the Stipulated Inventory Order contemplated a two-step process for the facility inventory. BSA and Brink have not provided sufficient evidence in support of their interpretation of the Stipulated Inventory Order to raise a genuine issue of material fact.

Page 28 - MEMORANDUM OPINION

c.   Emerson fully participated in facility inventory process

BSA and Brink claim that they were not afforded an opportunity to participate fully in the facility inventory process in the following ways: (1) Thornton-Smith did not give Emerson a full facility inventory (i.e., inventory spreadsheet); (2) Thornton-Smith instructed Emerson only to identify and/or tag personal property items that belonged to either BSA or Brink; and (3) BSA and Brink had only one opportunity to visit the facility, whereas other amateur builders affiliated with LTB had multiple visits.

In his declaration, Emerson claimed that Thornton-Smith did not provide him with a complete inventory spreadsheet.  Declaration of Ashely Emerson in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment at 3 ("Emerson Declaration").

Thornton-Smith explained that she only created a comprehensive inventory spreadsheet after the identification process was completed. Supplemental Thornton-Smith Declaration at 4.  Even then, she stated, the inventory spreadsheet did not itemize every personal property item in the facility.  Id.  She further explained that the differences in the inventory spreadsheets provided to other amateur builders arose as claims to specific personal property items were added and the inventory spreadsheets became more extensive.  Id. at 5.  The first inventory spreadsheet Thornton-Smith provided to Emerson contained mainly bulk items.  Id. at 4.  As each amateur builder visited the facility and claimed specific personal property items, Thornton-Smith added a more specific description of each personal property item.  Id. at 4; Thornton-Smith Declaration at 5.  As a result, the inventory spreadsheets became

Page 29 - MEMORANDUM OPINION

lengthier. Thornton-Smith Declaration at 5. Amateur builders who visited the facility later in the facility inventory process received more detailed versions of the inventory spreadsheets. Thornton-Smith Declaration at 5. Thornton-Smith further admitted that she may have made mistakes in printing out the inventory spreadsheets because of her limited computer skills. Supplemental Thornton-Smith Declaration at 5.

Emerson also asserted that he did not identify and/or tag general inventory items because both Thornton-Smith and King advised him only to identify and/or tag personal property items belonging to BSA and Brink. Emerson Declaration at 3-4. There is nothing inconsistent in those statements with the inventory process provided for in the Stipulated Inventory Order. He claimed that Thornton-Smith never advised him that he should have been identifying and/or tagging personal property items necessary to complete the aircraft of BSA and Brink.[8] Emerson Declaration at 4. She would not have been doing her job if she had.

Thornton-Smith explained that she told Emerson "to tag anything

---

[8] Thornton-Smith noted that Emerson tagged other personal property items in addition to those listed in the inventory spreadsheet as already identified as belonging to BSA and Brink. Supplemental Thornton-Smith Declaration at 6. According to King, Emerson tagged "general inventory [items], such as intake covers, instrument panel harnesses, and cables." King Declaration at 4.

Emerson explained that he did not tag any general inventory items. Emerson Declaration at 6. He added to the inventory spreadsheet personal property items previously assigned and owned by BSA; the intake covers were painted with BSA's custom paint, the wiring harness was embossed with BSA's serial number, and the cables already were in BSA's aircraft. Id.

Regardless of whether Emerson did or did not tag general inventory items, Emerson had the opportunity to identify and tag general inventory items during his visit, as provided for under paragraph 4(b) of the Stipulated Inventory Order.

Page 30 - MEMORANDUM OPINION

that he felt belonged to either [BSA] or Brink." Thornton-Smith Deposition, 65:15-16. She specifically told him that he could "identify any property in the facility in which BSA or Brink claimed an interest, without limitation." Thornton-Smith Declaration at 4. Thornton-Smith also stated that Emerson was "allowed anywhere in the facility." Thornton-Smith Deposition, 65:22; Thornton-Smith Declaration at 4. King asserted that he never "instructed [Emerson] that he should not claim anything he wanted to claim." Supplemental King Declaration at 3. King averred that he "said nothing to Emerson regarding any instructions regarding his appointment and in any event [King] would not have said anything or done anything to interfere with CAZ and Emerson in any way." Id.

Paragraph 4(b) of the Stipulated Inventory Order provided that amateur builders were to be granted entry into the facility to identify "any property in which they claim an ownership interest." As shown in her declarations and at her deposition, Thornton-Smith provided instructions consistent with the objectives of the Stipulated Inventory Order. Neither Thornton-Smith nor King nor the Stipulated Inventory Order limited or narrowed the types of personal property items in which Emerson could claim an ownership interest on BSA's and Brink's behalf.

BSA and Brink further claimed that Thornton-Smith and/or CAZ afforded other amateur builders more than one visit to the facility. According to the evidence, however, aside from King and Daryle Ingalsbe (another principal of LTB), no other amateur builder made multiple visits to the facility.

Thornton-Smith explained that King and Ingalsbe made claims on

Page 31 - MEMORANDUM OPINION

multiple occasions because they were continually present at the facility

conducting business for LTB. Supplemental Thornton-Smith Declaration at

4. King explained that the trustee authorized him and Ingalsbe, as

buyers of the debtor's assets, to be present in the facility while CAZ

and Thornton-Smith conducted the facility inventory. Supplemental King

Declaration at 3. King and Ingalsbe were at the facility to conduct

LTB's business. Id.

Based on the evidence in the record before me, I conclude that

Emerson had the opportunity to participate fully in the facility

inventory process to claim personal property owned by BSA and Brink. The

defendants have not provided any evidence to create a genuine issue of

material fact tending to establish otherwise.


d. Waiver under Stipulated Inventory Order

LTB contends that BSA and Brink waived their right to claim

additional personal property items within the facility after their

April 30, 2010 appointment. LTB argues that the Stipulated Inventory

Order clearly provided that any failure by an amateur builder to claim

personal property items during its appointment waived its right to claim

such items later.

Plainly reading paragraph 4(b) and paragraph 6 of the

Stipulated Inventory Order, I agree with LTB that BSA and Brink cannot

assert any further claims to additional personal property items at the

facility after their appointment. Paragraph 4(b) clearly states that

unless alternative arrangements have been made, an amateur builder waives

its right to claim specific personal property items in the facility if it

Page 32 - MEMORANDUM OPINION

fails to assert its claim by the deadline date.  Paragraph 6 further bolsters the waiver in providing that the facility inventory is "the exclusive and final method of establishing the ownership of personal property [items] in the facility."  Moreover, paragraph 2 of the Stipulated Inventory Order required that the facility inventory be completed by June 7, 2010, in light of the sale of the debtor's assets to China Aviation and LTB, as assignee.  Altogether, these provisions imposed a strict deadline by which amateur builders had to claim their ownership interests in specific personal property items.

As LTB points out, BSA and Brink had their chance on April 30, 2010, to claim an ownership interest in any personal property items at the facility.  Through their proxy, Emerson, BSA and Brink did so. Emerson had unrestricted access to the facility.  He identified and tagged various personal property items.  Emerson could have identified and tagged any personal property item as belonging to BSA and Brink during the appointment.  Once he completed his appointment, he waived any further chance to identify and tag any additional personal property items as belonging to BSA and Brink.

BSA and Brink have not come forth with sufficient evidence to raise a genuine issue of material fact that they had a right to claim additional personal property items after they completed their April 30, 2010 appointment.  Accordingly, I conclude that LTB is entitled to summary judgment on Count 1.

3.  Summary judgment on Count 2

LTB seeks summary judgment on its claim that it owns all of the

personal property items in which BSA and Brink now assert an ownership claim in their Additional Items Lists, as LTB had purchased all of the debtor's assets (with certain exceptions) under the sale. Neither BSA nor Brink, LTB argues, has provided any evidence supporting their alleged ownership claims.

BSA and Brink submitted the Additional Items Lists to the trustee, who incorporated these lists as Exhibit A and Exhibit B, respectively, in the Supplemental Status Report and Inventory Confirmation Order. The trustee noted that the personal property items on the Additional Items Lists were subject to competing claims of LTB and/or other amateur builders. Supplemental Status Report at 2.

Count 2 is generally but not entirely congruent with Count 1. While it is true that LTB purchased all of AIR, LLC's assets under Section 1.1 of the China Aviation APA, I cannot determine which of the personal property items in the Additional Items Lists constitute assets purchased by China Aviation and LTB, and what items may have left the facility with aircraft of other builders. Section 1.1(a) and Section 1.1(b) of the China Aviation APA provide that the purchased assets include all equipment, molds, hand tools, all supply inventories, raw materials, parts and finished goods inventory owned by AIR, LLC. The brief descriptions of these personal property items are not sufficiently specific for me to determine which personal property items constitute these assets.

Moreover, as BSA and Brink point out, the dispute over the personal property items listed in the Additional Items Lists may involve other individual amateur builders, not LTB. I cannot determine from the

Page 34 – MEMORANDUM OPINION

evidence in the record before me whether the personal property items in
the Additional Items Lists actually belong to LTB. Accordingly, I will
grant summary judgment in favor of LTB on Count 2 with respect to all
personal property items retained by LTB at the facility. However, LTB
has no standing as the "real party in interest" to a declaratory judgment
that it owns items of personal property on the Additional Items List that
have left the facility with the aircraft of other amateur builders. See
Warth v. Seldin, 422 U.S. 490, 499 (1975):

> The plaintiff generally must assert his own legal
> rights and interests, and cannot rest his claim to
> relief on the legal rights or interests of third
> parties.

Since such other amateur builders are not parties in this Adversary
Proceeding, and my jurisdiction is at best questionable with respect to
any claims that BSA and Brink may have against such other amateur
builders, to the extent I do not grant summary judgment to LTB on Count
2, I will dismiss it for failure to state a claim upon which relief can
be granted.


4.    Summary judgment on Counterclaim 1

      LTB moves for summary judgment on Counterclaim 1 for failure to
state a claim upon which relief can be granted. LTB's Motion is
procedurally compatible with Civil Rules 12(c) and 12(h)(2), applicable
under Rule 7012(b). In Counterclaim 1, defendants seek a judgment
"declaring the Trustee's Supplemental Report Re Inventory (August 14,
2010) (Docket No. 507) as the operative Inventory Report." I conclude
that LTB's Motion is well taken because I have no idea what the

Page 35 - MEMORANDUM OPINION

defendants' request for relief in Counterclaim 1 means.

Factual allegations in a complaint or counterclaim "must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must be adequate to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). I have no idea what relief the defendants are requesting in terms of the potential operative effect of the claim stated in Counterclaim 1, and I believe that under the standards announced by the Supreme Court in Twombly and Iqbal, both the bankruptcy court and LTB are entitled to know what effect defendants have in mind for Counterclaim 1 if it is to proceed beyond the summary judgment stage. No such illumination has been provided by defendants in response to the Motion. Summary judgment is appropriate in favor of LTB on Counterclaim 1.

5. Summary judgment on Counterclaim 3

As to the Counterclaim 3, I agree with LTB that it is moot, as BSA and Brink were afforded a reasonable opportunity and already have identified personal property items at the facility in which they claim an ownership interest. BSA and Brink identified further claimed personal property items by compiling the Additional Items Lists. Because no genuine issue of material fact has been raised as to Counterclaim 3, I grant summary judgment in favor of LTB.

6. Summary judgment on Counterclaim 4

With respect to the Counterclaim 4, I again agree with LTB that

Case 10-03246-rld    Doc 155    Filed 06/08/11

1  it is moot, as BSA, Brink and LTB already have attempted to resolve their

2  disputes over the ownership of certain personal property items through a

3  court-sponsored mediation process with Judge Brown.  Accordingly, I grant

4  summary judgment in favor of LTB, as no genuine issue of material fact

5  exists as to Counterclaim 4.

6

7  Conclusion

8       Based on the record before me and my application of applicable

9  legal authorities, I will grant the Motion as to Count 1, and

10 Counterclaims 1, 3 and 4 in its entirety; I will grant summary judgment

11 in part as to Count 2 and dismiss the balance for failure to state a

12 claim upon which relief can be granted; and I will dismiss Counterclaim 2

13 as moot, as agreed by the parties.  Counsel for LTB should submit an

14 order consistent with the conclusions in this Memorandum Opinion within

15 the next ten days.

16                                 ###

17

18 cc:     Susan S. Ford
         Timothy A. Solomon
19       Marjorie A. Elken
         Lisa M. Schiller
20       Norman Malinski

21

22

23

24

25

26

Page 37 - MEMORANDUM OPINION